UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RADIO ONE, INC.,
a Delaware corporation,

       Plaintiff,                                  Case No. 06-13963
                                                  Honorable Lawrence P. Zatkoff

v.

ERNEST WOOTEN (a/k/a
JOHN MASON), and DRUM
MAJOR CONSULTING, INC.,
a Michigan corporation,

       Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
Federal Building, in the City of Port Huron,
State of Michigan, on the September 20, 2006

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
                    UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction filed on September 8, 2006. The preliminary injunction hearing was held on September 20, 2006. For the reasons that follow, Plaintiff's Motion for Preliminary Injunction is GRANTED.

**II. BACKGROUND**

Defendant Mason is a prominent radio personality. Mason is the sole shareholder of a consulting company, Defendant Drum Major. Plaintiff is the nation's seventh largest radio broadcaster, and operates three Detroit radio stations. In May 2001, Mason was hired by Plaintiff

as a radio talk show personality. Drum Major was also hired by Plaintiff to provide consulting services. Mason's employment agreement contained the following provision:

> SECTION 10: RESTRICTIVE COVENANT
>
> Talent acknowledges and agrees that, because of the value of the unique services to be provided by Talent and the marketing and promotion provided by Radio One and Talent's possession of confidential and sensitive information obtained during employment with Radio One, Radio One has legitimate business interests in assuring that Talent's knowledge and information are not converted to the use of entities which are in competition with Radio One. In the light of the need for Radio One to protect its advertising customer relationships, as well as Radio One's expenditure for marketing and promotion and provision of training and confidential and sensitive information to Talent, while Talent serves as Live Show personality, and for a period of six (6) months after Talent's position with Radio One expires or terminates for any reason whatsoever, Talent shall not appear, whether directly or indirectly, as an announcer or personality on or perform services in anticipation of such a position for a radio station within a seventy five (75) mile radius of the transmitter location of any such station in the Detroit, Michigan market owner and/or operated by Radio One. . . . Talent further acknowledges and agrees that the covenants and restrictions contained herein are necessary for the protection of Radio One's legitimate business interests and are reasonable in scope and content.

Drum Major's contract with Plaintiff contained the following provision:

> 9. Noncompete, Non-Solicitation.
>
> * * *
>
> 9.2   During the Noncompete Period, Consultant shall not directly or indirectly through another third party (i) induce or attempt to induce any employee of the Company, or any subsidiary or affiliate, to leave the employ of the Company or any subsidiary or affiliate, (ii) hire any individual who was an executive of the Company, or any subsidiary or affiliate, or (iii) induce or attempt to induce any customer, supplier, licensee or other third party having a business relationship with the Company, or any subsidiary or affiliate, to cease doing business with the Company, or any subsidiary or affiliate, or interfere materially with the party having a business relationship with the Company or any subsidiary or affiliate.

Mason's contract with Plaintiff expired on July 29, 2006. Plaintiff alleges that Mason arranged to begin broadcasting on a rival radio station beginning in September 2006. Plaintiff also alleges that Mason and Drum Major have been soliciting employees and advertisers away from

Plaintiff. Plaintiff seeks a preliminary injunction enjoining Mason and Drum Major from appearing on the air, and from soliciting Plaintiff's employees and advertisers.

## II. LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled to preliminary injunctive relief:

> (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;
>
> (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
>
> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
>
> (4) whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The standard for preliminary injunction is not a rigid and comprehensive test; the four factors are elements to be balanced, not prerequisites that must be satisfied. "[T]hese factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc*. 963 F.2d 855, 859 (6th Cir. 1992).

## IV. ANALYSIS

**A.     Likelihood of Success on the Merits**

Michigan law provides that:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an

>employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

M.C.L. § 445.774a.

The Michigan Court of Appeals has held that the statute "represents a codification of the common-law rule 'that the enforceability of noncompetition agreements depends on their reasonableness.'" *St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260, 265-66 (Mich. Ct. App. 2006) (quoting *Bristol Window and Door, Inc v Hoogenstyn*, 250 Mich. App. 478, 495 (Mich. Ct. App. 2002).

To be enforceable, a noncompete agreement must protect an employer's reasonable competitive business interests, and be reasonable in terms of the type of employment regulated, the geographical scope, and the term of duration. *St. Clair Med.*, 270 Mich. App. at 266. Merely preventing all competition is not a legitimate business interest; the noncompete agreement must prevent the employee from gaining an unfair advantage in competition with the employer. *Id.*

In *St. Clair Medical*, the defendant, a physician, had a noncompete agreement with his employer that prevented the defendant from engaging in the practice of medicine within seven miles of any of his employer's offices for one year after his employment ended. The Michigan Court of Appeals upheld a grant of summary disposition enforcing the noncompete agreement.

The court rejected the defendant's argument that the agreement was unreasonable. The court noted that:

>In a medical setting, a restrictive covenant can protect against unfair competition by preventing the loss of patients to departing physicians, protecting an employer's investment in specialized training of a physician, or protecting an employer's

confidential business information or patient lists.

*Id.* at 266-67. The court agreed with the defendant that there were material issues of fact regarding whether the defendant had access to confidential information, and the extent to which the plaintiff had provided the defendant with specialized training. However, the court held that the noncompete agreement was enforceable as a matter of law because "it provided plaintiff with time to regain goodwill with its patients," and "prevented defendant from using patient contacts gained during the course of his employment to unfair advantage in competition with plaintiff." *Id.* at 268. The court noted that:

> A physician who establishes patient contacts and relationships as the result of the goodwill of his employer's medical practice is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure. This risk of unfair competition in this context does not result from access to patient lists, but from the risk that patients will seek to follow a departing physician. Where the physician-patient relationship was facilitated by a physician's association with his employer or resulted from advertising dollars expended by that employer, a physician can unfairly take advantage of the employer's investments in advertising and goodwill when competing with the former employer to retain patients. Here, plaintiff operated clinics located in the cities of Yale, St. Clair, and Port Huron, which drew patients residing throughout St. Clair County. Plaintiff expended funds to advertise its services in these cities. Defendant practiced medicine for plaintiff for approximately 20 months and took advantage of plaintiff's goodwill in the community and advertising expenditures to attract patients.

*Id.* (citations omitted).

In the instant case, Mason argues that the noncompete agreement is unreasonable. Mason argues that he was a popular Detroit-area personality long before he began working for Plaintiff, and only wishes to use his pre-existing skill and fame. Mason also argues that there is no evidence he solicited employees or advertisers away from Plaintiff, or that he is using confidential information.

However, even if Mason did not acquire any specialized skills through his employment with Plaintiff, and is not using confidential information, the noncompete agreement is still enforceable.

In *St. Clair Medical*, discussed above, the Michigan Court of Appeals upheld the enforcement of a noncompete agreement through summary disposition, even though there were disputed issues regarding the defendant's access to confidential information, and the extent of specialized training the defendant received from the plaintiff. The court held that the noncompete agreement was reasonable, and thus enforceable, because it protected the plaintiff's business goodwill.

Plaintiff in the instant case has a equivalent interest in protecting its business good will. Of course, there are significant differences between the medical field and the radio industry. However, there are relevant analogies between the issues in *St. Clair Medical* and the instant case. The Michigan Court of Appeals noted that the plaintiff had built patient goodwill through advertising, and that the noncompete agreement was necessary to protect the goodwill.

Similarly, Plaintiff in the instant case built listener goodwill by promoting Mason and his show. As the plaintiff in *St. Clair Medical* was entitled to a period of time to attempt to retain patient goodwill, Plaintiff in the instant case is entitled to a period of time to promote a new radio personality, in order to retain its audience and sponsors. Through its promotion, Plaintiff enabled Mason to obtain a listener base; if Mason were able to immediately transfer that listener base to a competing station, Plaintiff would lost the fruit of its efforts. Thus, it was reasonable for Plaintiff to seek protection with the noncompete agreement.

The Court also finds that the geographical scope and duration of the noncompete agreement are reasonable. The agreement prohibits Mason from appearing on a radio station within 75 miles of any of Plaintiff's three Detroit transmitters. Mason argues that the 75 mile scope of the agreement is unreasonable, because an audience beyond that would not be familiar with him. However, that is precisely the purpose of the noncompete agreement: to prevent Mason from

transferring his listeners to a rival station before Plaintiff has had an opportunity to retain them with a new radio personality. Plaintiff operates radio stations throughout the United States, but does not seek to prevent Mason from competing in all of its markets. Mason is not completely prohibited from using his broadcasting talents; he is merely prohibited from immediately transferring his audience away from Plaintiff. The Court further finds that the six month duration is reasonable.

The Court finds that the noncompete agreement is reasonable, and thus there is a strong likelihood that Plaintiff will succeed on the merits.

**B.     Irreparable Harm to Plaintiff**

Plaintiff argues that Mason's breach of the noncompete agreement will cause it "to lose business, goodwill and income, and to suffer irreparable damage to its reputation and competitive advantage." This argument is persuasive; the Sixth Circuit has held that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (citations omitted). The Court agrees that it would be difficult to compute Plaintiff's damages due to loss of audience and sponsors. This factor weighs strongly in favor of Plaintiff.

**C.     Irreparable Harm to Others**

Mason argues that he will be irreparably harmed if he is unable to begin broadcasting immediately, because the longer he is off the air the more his popularity will diminish. The Court acknowledges that enforcing the noncompete agreement will impose a hardship on Mason; however, this fact is not dispositive. In *Superior Consulting Co. v. Walling*, 851 F. Supp. 839 (E.D. Mich.

1994), the court affirmed its prior issuance of a preliminary injunction, and entered a permanent injunction enforcing a noncompete agreement. The court held that:

> Enforcing the non-competition agreement imposed on [the defendant] the significant hardship of not being able to work in his field of expertise, except through a business of his own, for a period of six months. Though serious, this harm is finite. If [the plaintiff] suffered irreparable harm to its competitive position, the loss would be of incalculable quantity and duration. Also, the injunction sought by [the plaintiff] only prevented [the defendant] from violating his freely entered contractual obligations to [the plaintiff]. While the hardship to [the defendant] caused by issuing the preliminary injunction was not inconsiderable, the balance of hardships here tilted in favor of [the plaintiff].

*Id.* at 848.

Likewise, Plaintiff in the instant case is only seeking to keep Mason from violating his freely entered contractual obligations. When Mason signed his employment contract with Plaintiff, he was familiar with noncompete agreements. In fact, when Mason signed the employment contract in May 2001 he was still bound by a noncompete agreement with a previous employer. Plaintiff agreed to hire Mason two months before the expiration of his prior noncompete agreement, and agreed to pay him $275,000 even though he was unable to work during that period due to the prior noncompete agreement.

Mason was advised by counsel before signing the instant employment contract, and both Mason and his counsel were aware of the noncompete provision in the contract. Furthermore, the Court notes that the contract is a thorough and comprehensive agreement, and contained the following provision:

> Talent further acknowledges and agrees that, in the event of his termination of his position with Radio One, that his experience and capabilities are such that Talent can obtain employment in business activities which are of a different or non-competing nature with his activities in his position with Radio One, and that the enforcement of a remedy hereunder by way of injunction shall not prevent Talent from earing a reasonable livelihood.

8

Mason received benefits under the contract; it is thus not an undue hardship to require Mason to perform his obligations under the contract. Thus, this factor weighs in favor of Plaintiff.

**D.     Impact on the Public Interest**

Defendant argues the public has an interest in hearing Defendant's radio program. However, the public does not have an interest in individuals violating their contracts. To the contrary, the public has an interest in the enforcement of valid employment contracts. *Superior Consulting*, 858 F. Supp at 848. This factor weighs in favor of Plaintiff.

The Court finds that all four factors weigh in favor of Plaintiff's request for a preliminary injunction; thus, Plaintiff's motion will be granted.

**E.     Security Requirement**

The Sixth Circuit has held that "the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995). The Court notes that Defendant is the seventh largest radio broadcasting company in the United States, and owns and/or operates 71 radio stations located in 22 urban markets. The Court finds that Defendant does not pose a collection risk, and thus will not require Defendant to post a bond.

## V.  CONCLUSION

Accordingly, and for the reasons stated above, the Court grants Plaintiff's motion for preliminary injunction against Defendants Mason and Drum Major, and hereby ORDERS that:

1.     Mason is hereby enjoined:

   (i)     From appearing, whether directly or indirectly, as an announcer or personality on or performing services in anticipation of such a position for a radio station within a seventy five (75) mile radius of the transmitter location of any such station in the Detroit, Michigan market owner and/or operated by Radio One.

2.     Drum Major is hereby enjoined:

(i) From inducing or attempting to induce any employee of the Radio One, or any subsidiary or affiliate, to leave the employ of the Radio One or any subsidiary or affiliate ;

(ii) From hiring any individual who was an executive of the Radio One, or any subsidiary or affiliate; and

(iii) From inducing or attempting to induce any customer, supplier, licensee or other third party having a business relationship with the Radio One, or any subsidiary or affiliate, to cease doing business with the Radio One, or any subsidiary or affiliate, or interfering materially with the party having a business relationship with the Radio One or any subsidiary or affiliate.

This Order shall remain in effect until January 29, 2007, or until further order of the Court.

**IT IS SO ORDERED.**

                                        **s/Lawrence P. Zatkoff**
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE